NANCY B. WHITE, PLAINTIFF, v. EDWARD WHITE, IV, DEFENDANT.

WRIFFORD WHITE, CLAIMANT-APPELLANT, v. NANCY B. WHITE, DEFENDANT-RESPONDENT.

Argued November 8, 1954—Decided November 22, 1954.

*Mr. Nathan Reibel* argued the cause for the claimant-appellant.

*Mr. Ervin S. Fulop* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

BURLING, J. This is a civil action. The defendant-respondent herein, Nancy B. White, instituted an action for separate maintenance and custody of children against her husband, Edward White, IV (hereinafter referred to as Edward White) (who was not within the jurisdiction, was not served personally and did not enter an appearance) by attachment. Wrifford White, Edward White's brother, claiming ownership of certain real estate which (with the rentals therefrom) was subjected to the attachment on Edward White's property interests in New Jersey, instituted the proceeding from which this appeal stems by a complaint filed to settle his claim to that property. See *R. R.* 4:77–3, formerly *Rule* 3:72–3 as amended January 1, 1952. The Superior Court, Chancery Division, entered judgment for the plaintiff in attachment, Nancy B. White, defendant-respondent herein. The claimant, Wrifford White, appealed to the Superior Court, Appellate Division. Prior to hearing there we certified the appeal on our own motion.

The real estate involved is a three-family dwelling and premises known as 209 Holly Street in Cranford, New Jersey. The property was purchased by Edward White, the defendant in the separate maintenance action, in September, 1938, and was conveyed by him (through a straw party) to himself and his wife, Nancy B. White, in February, 1946. In February 1951 Edward White and Nancy B. White conveyed the premises to Edward White's mother, Edna W. White. The deed of conveyance was recorded in June, 1951. There is evidence that Edward White's money was used for this purchase and for the purchase of the home of Edward White and Nancy B. White on Hampton Road in Cranford which was purchased in Edward White's mother's name and

conveyed to him and Nancy B. White ostensibly in exchange for the Holly Street property. Nancy B. White testified that she and Edward White continued to pay the expenses of the Holly Street property after these transfers. They received the rents therefrom and reported the income on their income tax return. No rent money was paid to Edward White's mother. Nancy B. White further testified that her husband had advised her that the transfers were a legal method of avoidance of capital gains taxes on the Holly Street property in the event they decided to sell the same. She also testified to the existence of an unrecorded deed retransferring title to the Holly Street property from Edna W. White, her husband's mother, to Edward White and Nancy B. White. Edna W. White corroborated Nancy White's testimony that Edward White's plan was to avoid capital gains tax. However, she testified on depositions that she, Edna W. White, had expended $3,500 of her own funds for the Hampton Road property (which was worth $21,000 and was encumbered by a $15,000 mortgage) and after the exchange owned the Holly Street property (which was worth about $21,000 and was encumbered by a $6,000 mortgage). Her testimony on depositions is evasive as to the receipt of income from the Holly Street property. She· testified that she discussed with Edward White the transfer of the Holly Street property to Wrifford White, but was evasive as to the details and that Edward White collected and kept the rentals thereafter. She evaded questions designed to elicit whether she had reconveyed the Holly Street property to Nancy B. White and Edward White.

Edna W. White conveyed the Holly Street property, without consideration, to Wrifford White, a resident of Pennsylvania, on January 9, 1953, and the deed was recorded.

The evidence of Edward White's desertion of his wife and children is uncontradicted. No question as to the sufficiency of evidence of desertion or of the need for support is asserted on this appeal.

The questions involved on this appeal by Wrifford White, the claimant to the Holly Street property, are (a) whether

realty, legal title to which is in a nonresident, may be attached by a resident wife who asserts that her absconding husband has an equitable interest therein, and (b) whether the wife's testimony was erroneously received in evidence to establish that equitable interest against the legal title owner's claim of property.

The claimant contends that Nancy B. White as the plaintiff in the separate maintenance action had no right to resort to attachment. The pertinent statutory provision is *N. J. S.* 2A :34–26, which reads as follows:

"When a husband cannot be found within this state to be served with process, his estate, property and effects within this state and the rents and profits thereof may be attached to compel his appearance and performance of any judgment or order which may be made in the action.

Where the proceedings are by process of attachment and the defendant does not appear, the judgment shall be enforceable only out of and against the property attached."

The word "property" as used in this section includes "real property" and the legislative will has directed that this term, unless otherwise expressly provided, shall be construed to include "all rights thereto and interests therein." *R. S.* 1 :1–2 (and *R. S.* 1 :1–2, as am. *L.* 1948, *c.* 4, *sec.* 1; *L.* 1953, *c.* 4, *sec.* 1). There is no doubt that the husband's equitable interests may be attached.

Insofar as resort to this procedure in separate maintenance actions is concerned, the predecessor statute, *R. S.* 2 :50–40, authorized such actions to be initiated by writs of sequestration. *George v. George,* 20 *N. J. Misc.* 41 (*Ch.* 1941). The amendment by *L.* 1948, *c.* 320, *sec.* 28, merely substituted the writ of attachment for the writ of sequestration in order to conform the statute to former *Rule* 3 :72–6 which declared the writ of sequestration superseded. *Cf. R. R.* 4 :77–7. The legislative purpose is clear that attachment may be resorted to in instituting separate maintenance actions. The revision of 1951 (*L.* 1951, *c.* 344) merely reenacted *R. S.* 2 :50–40, as amended, *supra,* as *N. J. S.* 2A :34–26, *supra,* with deletion of procedural matters not

necessary to the present consideration of the question whether the process of attachment may be resorted to as initial process in separate maintenance actions.

■ The claimant buttressed his argument with the contention that where the legal title is in another the equitable interest may not be attached. Our recent decision in *Republic of China v. Pong-Tsu Mow*, 15 *N. J.* 139 (1954), is dispositive against the claimant in this respect. Our holding, expressed by Mr. Justice Oliphant, in the *Republic of China* case, *supra* (15 *N. J.*, at *page* 147) was:

"In view of the fact that the statute permits the issuance of our writ of attachment on an equitable right it is immaterial in whom the technical legal title may be. * * *"

■■ The claimant also contended on this appeal that the attachment was invalid because the statute does not require notice to persons other than the defendant (*i. e.*, the defendant in the principal action, whose interests are attached) who may claim an interest in the property. This question is moot. The claimant did not attack the writ of attachment by motion, but filed a claim to the property, thus submitting himself to the general jurisdiction of the court and waiving the alleged lack of notice. *Trautman v. Higbie*, 10 *N. J.* 239, 242–243 (1952). *Cf. Boice v. Boice*, 131 *N. J. Eq.* 41, 42–43 (*E. & A.* 1941). However, it appears that no notice to the holder of the legal title other than the service of the attachment on the tenants is required to satisfy constitutional requirements of due process. *Wood v. Price*, 79 *N. J. Eq.* 1, 9 *et seq.* (*Ch.* 1910), affirmed 79 *N. J. Eq.* 620, 621 *et seq.* (*E. & A.* 1911). *Cf. Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565 (1878); *Baltimore & O. R. Co. v. Hostetter*, 240 *U. S.* 620, 36 *S. Ct.* 475, 60 *L. Ed.* 829 (1916); *Cooper v. Reynolds*, 10 *Wall.* (*U. S.*) 308, 19 *L. Ed.* 931 (1870).

■ The final question involved is whether the trial court erred in permitting Nancy B. White to testify as to the circumstances surrounding the conveyance of the Holly Street property to her husband's mother. The theory upon which this testimony was introduced and received in evi-

dence was that Edward White's mother was a constructive trustee for Edward White and Nancy B. White. The testimony was properly received in evidence under the settled principles expressed upon the theory of constructive trust in *Moses v. Moses*, 140 *N. J. Eq.* 575, 577 *et seq.* (*E. & A.* 1947). The claimant, Wrifford White, seeks to avoid application of the doctrine expressed in the *Moses* case, *supra*, in the present matter upon the premise that Nancy B. White may be barred from relief by virtue of the counter-doctrine that he who comes into equity must come in with clean hands with respect to the transaction involved in suit. *E. g.*, *A. Hollander & Son, Inc., v. Imperial Fur Blending Corp.*, 2 *N. J.* 235, 246 (1949). However, the "clean hands" philosophy is not an arbitrary rule. As Mr. Justice Jacobs said while sitting as judge of the Superior Court, Appellate Division, in *Medical Fabrics Co. v. D. C. McLintock Co.*, 12 *N. J. Super.* 177, 180 (*App. Div.* 1951):

"While the doctrine is firmly rooted and naturally appeals to persons of good conscience, it may well disserve the interests of justice if applied oversensitively or as a rigid formula restraining the Court's just exercise of discretion. * * *"

In the present case there is no evidence that either Nancy B. White or Edward White intended or contemplated tax *evasion*. The evidence is that Nancy B. White at least was informed by her husband that the scheme was a legal plan for lawful tax avoidance. If it were not lawful avoidance of taxes, the fact of its evasive design coupled with Edward White's erroneous instruction to his wife in that regard lends strength to the trial court's determination that this was a step in the deliberate effort of the husband unjustly to deprive his wife of her interest in the property. We are satisfied that the reception of Nancy B. White's testimony under the circumstances of the present case was not erroneous.

For the reasons expressed in this opinion the judgment of the Superior Court, Chancery Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.