GERALDINE CALLAGHAN, OTHERWISE KNOWN AS GER-
ALDINE LEONARD, PLAINTIFF, v. TERRENCE LEON-
ARD, DEFENDANT.

Superior Court of New Jersey
Chancery Division

(Matrimonial)
Decided April 20, 1978.

150

Mr. *Richard M. Mandel* for the defendant (*Messrs. O'Brien* and *Liotta,* attorneys).

*Mr. Bernard S. Glick,* attorney for plaintiff.

GROSSI, J. C. C. (temporarily assigned). Plaintiff brings an action for annulment, alleging defendants prior subsisting marriage. Defendant counterclaims for a dual annulment based on lack of knowledge that his prior marriage continued to subsist at the time of the second marriage.

Defendant married his first wife on March 11, 1961. An Alabama divorce was purportedly entered on June 9, 1965. On June 17, 1965 defendant received a copy of what

appeared to be a divorce decree. On August 15, 1965 the parties to the present action were married. The parties were separated on February 17, 1977. Defendant was not informed that he had never been effectively divorced until apprised of this by his attorney on February 28, 1977. On April 27, 1977 plaintiff filed her complaint for annulment in the present action. Defendant obtained a divorce from his first wife on September 19, 1977, pursuant to *N. J. S. A.* 2A:34–2 (d).

Defendant contends that his claim for annulment is of equal entitlement to that of plaintiff. He notes that the relief sought is not prohibited by *N. J. S. A.* 2A:34–1 and also asserts that he comes into the present action with clean hands. Plaintiff maintains that he is not permitted to bring the present action under the relevant statutes. She also argues that he is estopped from obtaining this decree by his own actions, including failure to ascertain the existence of an Alabama decree.

Dual judgments of divorce have been entered in this jurisdiction since the effective date of the present Divorce Act, on both fault and nonfault grounds, pursuant to *N. J. S. A.* 2A:34–7. *Kruger v. Kruger,* 139 *N. J. Super,* 413 (App. Div. 1976) ; *Indiero v. Indiero,* 116 *N. J. Super.* 193 (Ch. Div. 1971) ; *Quinn v. Quinn,* 118 *N. J. Super.* 413 (Ch. Div. 1972) ; *Lynn v. Lynn,* 153 *N. J. Super.* 377 (Ch. Div. 1977).

Although the granting of a dual annulment is not unknown to this jurisdiction, *J. B., Plaintiff v. G. B., Defendant,* 111 *N. J. Super.* 33 (Ch. Div. 1970), it appears that there have been no reported cases yielding such a decision under the present Divorce Act. While it seems clear that a judgment annulling this "marriage" is mandated by *N. J. S. A.* 2A:34–1(a), it is argued that while judgments of dual divorce are clearly mandated by *N. J. S. A.* 2A:34–7, absence of a companion statute regarding annulments precludes this result. A reason for absence of a similar statute appears in the *Comment* to *N. J. S. A.* 2A:34–1,

*Final Report to the Governor and the Legislature* of the Divorce Law Study Commission at p. 60:

> If there is a broadening of the grounds for divorce it may be anticipated that judgments of nullity will become rare. Moreover, if there is a comprehensive recodification, consideration may be given to stipulating one action for dissolution that embraces annulment as well as divorce. The above revision is an effort to preserve existing law without any major change in policy but at the same time to adopt it to other recommended changes. The only innovation is to set forth in more specific form the present reference to general equity jurisdiction.

Therefore, it appears that the emphasis of the Divorce Act in providing greater accessibility of marital dissolution would not prevent the relief sought by defendant. Rather the anticipation appears to have been that there would be less need to seek nullification, and that a revision of this section was not immediately necessary.

█ Legislative intent continues to allow broad discretion to the courts to grant annulments. *Costello v. Porzelt,* 116 *N. J. Super.* 380 (Ch. Div. 1971); *Final Report to the Governor and the Legislature* at 59, 60. Moreover, the legislature was expressly apprised of the need to continue granting annulments under the general equity jurisdiction of the Supreme Court, and despite the initial exclusion of this ground from the statute when introduced, its restoration in the statute's final form speaks for itself. *Public Hearings on Assembly Bill No. 1100, Vol. II* at 16, 58, 68.

There is also ample evidence that during the course of the public hearings on the present Divorce Act the Legislature was made aware of the unfortunate situation created by void foreign decrees. *Public Hearings, Vol. II* at 22, 23, 88; *Vol. I, at* 49A, 58A, 61A, 65A, 68A, 74A, 118A.

██ Defendant's offer of proof regarding his good faith belief in the existence of the Alabama decree having been accepted, he should not be estopped from obtaining the relief sought. Although the courts of this state continue to recognize the defenses of recrimination, condonation and unclean

hands as bars to annulment, *Ramshardt v. Ballardini,* 129 *N. J. Super.* 445 (Ch. Div. 1974), they may not be applied against the defendant in the present instance. It is true that plaintiff wife was in no way responsible for the situation which existed at the time of her marriage to defendant, but his conduct and good-faith efforts are sufficient to entitle him to an annulment also. *Hansen v. Fredo,* 123 *N. J. Super.* 388 (Ch. Div. 1973) ; *Tonti v. Chadwick,* 1 *N. J.* 531, 536 (1949).

Exercise of the general equity powers of this court consistent with legislative intent favoring the termination of dead marriages through an inquisitory rather than a wholly adversary process requires a judgment of annulment for both parties.

Enter order accordingly.