CLARA KAZIN, PLAINTIFF-APPELLANT AND CROSS-RE-SPONDENT, v. MICHAEL KAZIN, DEFENDANT-RESPON-DENT AND CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 23, 1978—Decided August 2, 1978.

Before Judges LORA, SEIDMAN and MILMED.

*Mr. Robert Diamond* argued the cause for appellant (*Messrs. Diamond, Grossman, Pitman & Anzaldi,* attorneys).

*Mr. Seymour Margulies* argued the cause for respondent (*Messrs. Brigadier & Margulies,* attorneys; *Mr. Jack Jay Wind* on the brief).

The opinion of the court was delivered by

SEIDMAN, J. A. D. This appeal presents the question of whether, on the facts of this case, plaintiff, who married defendant after obtaining a Mexican divorce from her husband, is barred by existing law from maintaining an action for divorce against defendant based in part on his alleged desertion, or, in the alternative, for separate maintenance. The trial judge issued a letter opinion in which he

concluded that since the Mexican divorce was void, plaintiff was not entitled either to a dissolution of the purported marriage to defendant or to support from him, and judgment was entered accordingly.[1] He queried, however, whether "with the more liberal policy toward divorce as evidenced by the Divorce Reform Act, Justice Wachenfeld's dissent in *Tonti* [*v. Chadwick*, 1 N. J. 531 (1949)] should now be the law."

Plaintiff married Jesse L. Liss in 1953 in Brooklyn, New York. They subsequently took up residence in this State. Four sons were born of the marriage, the eldest of whom is now about 17 years of age. By 1969 Liss had left plaintiff and was residing in New York. His requests for a divorce were refused by plaintiff. In February 1969 plaintiff met defendant who, a few months later, proposed marriage. This led to plaintiff's obtaining a Mexican divorce in circumstances that are disputed by the parties.

According to an affidavit filed by plaintiff in the proceedings below, the plan for a Mexican divorce originated with defendant. She stated that he arranged a conference in Newark at the office of his attorney, Milton Yormark, at which she was present along with defendant and Liss. She said that the lawyer assured them that a Mexican divorce would be valid. After consulting with his own attorney in New York, Liss agreed to sign all papers purportedly necessary to confer jurisdiction on the Mexican court. Defendant then made arrangements for plaintiff to go to Mexico, paying all the expenses, and he accompanied her there. A divorce decree was entered on May 27, 1969.

---

[1] The judgment is not in proper form. It recites that "[i]t is on this 11th day of October, 1977 ORDERED that judgment be and hereby is entered in accordance wtih the opinion of the Court decided September 1, 1977." This does not constitute an adjudication of the issues between the parties nor does it show with certainty what has been decided. Despite the patent deficiency of the judgment, we shall consider it as a dismissal of the complaint.

Liss filed a corroborating affidavit in which he confirmed that defendant was interested in seeing to it that there be a divorce as soon as possible. He said further that his own attorney convinced him that Mexican divorces were valid and would be recognized in this country provided that both parties appeared in the Mexican proceedings. Liss also stated that he remarried after plaintiff obtained the divorce decree.

Defendant maintained below in an affidavit that he was approached by Liss and the latter's attorney with respect to the matter and that it was Liss' attorney who made the arrangements for the Mexican divorce. He stated that he accompanied plaintiff to El Paso, and that she was then transported to Mexico, returning later the same morning after the entry of the divorce decree.

Plaintiff and defendant were married in this State on June 18, 1969. They lived together until July 1976, when defendant moved out of the marital residence. For a short time, defendant paid plaintiff $250 a week for her support. The payments were subsequently reduced and finally discontinued.

In October 1976 plaintiff instituted her action for separate maintenance and divorce. Defendant filed an answer in which, among other things, he denied that the parties were married to each other. By way of counterclaim, he sought an annulment of "the alleged marriage" on the ground that plaintiff had obtained a fraudulent Mexican divorce and that her marriage to Liss was still in full force and effect.

Subsequently, a consent order was entered permitting plaintiff to include in her answer to the counterclaim the defenses of estoppel, laches, fraud and unclean hands. Defendant was permitted therein to withdraw his counterclaim and, instead, to incorporate the allegations thereof into the affirmative defenses contained in his answer to the complaint. By another order, plaintiff was awarded *pendente lite* support in the sum of $155 per week.

It appears that counsel for both parties requested the court to decide on the basis of the pleadings and affidavits on file "whether or not defendant may raise the question of the invalidity of the Mexican divorce." The issue posed by the trial judge in his letter opinion was whether plaintiff would be "permitted a divorce with the equitable distribution and possible alimony which may follow," or whether she would "be unsuccessful because her inability to prove a valid marriage." He did not mention the alternate cause of action for separate maintenance. As indicated above, the trial judge determined that by reason of the void Mexican divorce plaintiff could not be granted the relief sought, despite a strong feeling on his part that since defendant was equally at fault with respect to that divorce, he "should not be permitted to avoid his marital obligations" by taking "a position inconsistent with his past actions."

 There can be no doubt that the Mexican divorce decree in this case was utterly void for want of jurisdiction of the subject matter. *Tonti v. Chadwick, supra,* 1 *N. J.* at 535. While the decree was not of the "mail order" variety, it is well-settled that a one-day appearance by a party entitles the decree to no greater recognition. *Warrender v. Warrender,* 79 *N. J. Super.* 114, 118 (App. Div. 1963, aff'd 42 *N. J.* 287 (1964) ; *cf. Kugler v. Haitian Tours, Inc.,* 120 *N. J. Super.* 260, 265 (Ch. Div. 1972). Nor do we discern in the decree in this case any semblance of validity because it recites that "the wife proved to be domiciled in this City by presenting the certificate of her inscription in the Municipal Registry of this city at the time she filed this proceeding and because both parties submitted expressly to the jurisdiction of the Court * * *." The parties agree that plaintiff was domiciled in New Jersey, that Liss was living in New York at the time, and that plaintiff went to Mexico with the sole purpose of obtaining a divorce. It was stressed in *Warrender v. Warrender, supra,* that

[a]s we are here dealing with the judgment of a foreign country, not a sister state, the full faith and credit clause of the Federal

Constitution is not applicable, but rather principles of comity. Such principles will not justify recognition of this divorce by our State because of its offensiveness to our public policy and statutes. * * * [79 *N. J. Super.* at 119]

We are not faced here with the constitutional imperative of "according * * * full faith and credit in practically conclusive measure to divorce decrees of sister states where both parties appear in the proceedings, even though overtones of collusion are present." *Warrender v. Warrender, supra* at 121; *cf. Schlemm v. Schlemm,* 31 *N. J.* 557, 565–572 (1960), and see *Woodhouse v. Woodhouse,* 11 *N. J.* 225, 228 (1953).

Plaintiff does not claim that her Mexican divorce decree was valid. She contends that (1) defendant, "by his conduct in originating, directing, aiding and participating with plaintiff's Mexican divorce and by his marriage to the plaintiff thereafter with full knowledge as to the circumstances surrounding said Mexican divorce is estopped and barred by unclean hands from denying the validity of said divorce [and] should be compelled to provide support for the plaintiff", (2) defendant is barred from raising the issue of the validity of plaintiff's prior Mexican divorce because he had allowed an unreasonable amount of time to pass before raising said position, and (3) plaintiff is entitled "to support *pendente lite* [*sic*]" because of the presumption of the validity of her marriage to the defendant.[2]

The equitable doctrines of unclean hands and estoppel must be viewed in proper perspective. They have been applied by the courts of this State in appropriate cases to preclude relief or to bar the assertion of a defense because of a party's participation or acquiescence in the procurement of a fraudulent or illegal divorce. See *Untermann v. Untermann,* 19 *N. J.* 507, 516–519 (1955); *Tonti v. Chadwick, supra,*

---

[2]Defendant cross-appeals "from so much of the final judgment * * * as would estop him from asserting the invalidity of a certain Mexican divorce procured by plaintiff * * *." See footnote 1, *supra*.

1 *N. J.* at 536; *Warrender v. Warrender, supra,* 79 *N. J. Super.* at 119.

If the outcome of this case were to depend upon defendant's conduct, we would have little difficulty in concluding that he should be estopped from assailing the Mexican decree. The law is clear that "[a] person may be precluded from questioning the validity of a divorce decree if, under all the circumstances, his conduct has led to the obtaining of the decree or for any other reason has been such as to make it inequitable to permit him to deny its validity." *Flammia v. Maller,* 66 *N. J. Super.* 440, 446 (App. Div. 1961). If defendant did not actually plan and arrange the obtaining of the Mexican divorce, he certainly participated in all of its aspects, and reaped the benefit of it by then marrying the person whose divorce he helped procure. *Cf. Woodhouse v. Woodhouse, supra,* 11 *N. J.* at 229.

But we do not see this case as turning on the issue of defendant's estoppel to deny the validity of the Mexican divorce. Our primary concern is, rather, whether, despite such estoppel, plaintiff may nevertheless be unable for other reasons to obtain the relief that she seeks, *i. e.,* either a judgment of divorce or, alternatively, separate maintenance. While the doctrine of estoppel or unclean hands may operate as a bar to affirmative relief or the interposition of a defense, it may not, to our knowledge, be invoked so as to validate a void divorce decree. This, we think, is the dilemma which confronts plaintiff, at least with respect to the divorce action.

Insofar as plaintiff's complaint for divorce is concerned, the defense of unclean hands would no longer be available to defendant. *N. J. S. A.* 2A:34–7. However, in a suit for divorce the marriage of the parties is an essential element to be proved, whether or not the defendant admits it. 12 *N. J. Practice (Herr, Marriage, Divorce and Separation)* (3d ed. 1963), § 2273 at 455; see *Tonti v. Chadwick, supra,*

1 *N. J.* at 536. Here, defendant's answer contained a specific denial of the marriage.

Without marriage there can be no breach of matrimonial duties, no suspension or dissolution of a marital relation which does not exist; therefore, in every divorce suit there must be a marriage and it must be proved; the decree in effect and in form affirms the marriage and declares the separation or dissolution; and this doctrine applies to all suits for setting up, declaring null, dissolving or in any way modifying a marriage status. [*Bolmer v. Edsall*, 90 *N. J. Eq.* 299, 305 (Ch. 1919)]

Plaintiff had the burden of proving that at the time she married defendant she was legally in a position to enter into a valid marriage. *Untermann v. Untermann, supra,* 19 *N. J.* at 516–517. That burden she could not possibly meet in light of the void Mexican divorce; consequently, her action for divorce was plainly not maintainable. Beyond this, to allow plaintiff to proceed with the divorce action would not only result in our giving implicit recognition to a bigamous marriage, it would also run counter to our strong public policy of denouncing Mexican divorces of the kind here involved. We are unable to perceive any countervailing state interest in allowing a formal dissolution of the purported marriage in the circumstances of this case.

This leads us to the remaining issue of plaintiff's alternate request for relief in the form of separate maintenance, which, of course, would also assume the existence of a marriage relationship between the parties. Although the trial judge did not specifically address the issue of separate maintenance, he deemed this case, on its facts, to be controlled by *Tonti v. Chadwick, supra,* and, for that reason, determined that relief could not be granted to plaintiff. At the same time, however, as we noted earlier, he expressed the view that the dissenting opinion in *Tonti* "should now be the law of New Jersey." But if the principles of law enunciated and applied in *Tonti* are indeed controlling on this aspect of the case, namely, plaintiff's entitlement to support, it should be evident that we, as an intermediate appellate court, are

bound to comply with the law established by the Supreme Court. *State v. Steffanelli*, 133 *N. J. Super.* 512, 514 (App. Div. 1975).

*Tonti* involved a suit for annulment of petitioner's ceremonial marriage to defendant on the ground of the latter's prior subsisting marriage to one Chadwick. Defendant denied the marriage was bigamous and counterclaimed for support for herself and the child of the union. She asserted that the prior marriage was dissolved by a decree of divorce obtained by Chadwick in Mexico. Petitioner challenged the legality of the decree. The Chancery Court dismissed the petition and awarded separate maintenance to defendant and the child. On appeal, the decree was reversed as to the award of support to defendant (child support was not challenged on the appeal), but affirmed otherwise.

After declaring the "mail order" decree to be "utterly void," and precluding petitioner from relief because of his "unclean hands" in failing to make inquiry respecting the Mexican divorce although he "had good reason to know that the decree of divorce was at least of questionable validity," 1 *N. J.* at 536, the court determined as "a corollary to the foregoing that defendant is not entitled to alimony." *Id.* It did so on two grounds: first, the failure of the counterclaimant to prove a lawful marriage to petitioner, and second, the inappropriateness of applying to petitioner the principle of estoppel where defendant was equally at fault.

On the first ground, the court said:

* * * The jurisdiction to award alimony is purely statutory; and the obligation is predicated upon a lawful marriage. *R. S.* 2:50–37; 2:50–39 [*N. J. S. A.* 2A:34–23; 2A:34–24]. The burden was on the counterclaimant to prove the marriage relationship; and in this, of course, she failed. * * *

The foregoing accurately reflected the state of the law at the time. Prior to its amendment in 1971, *N. J. S. A.* 2A:34–23 empowered the court, "after judgment of divorce or maintenance," to make such order as to alimony or maintenance

as might be reasonable and just in the circumstances. The limitation of support to cases of divorce or maintenance necessarily implied a lawful marriage, for one could obtain neither a divorce nor separate maintenance without first proving such marriage. The statute itself "having delineated the areas in which support may be granted," there was "no right to alimony where a marriage is declared a nullity." *Sharpe v. Sharpe,* 109 *N. J. Super.* 410, 415 (Ch. Div. 1970), mod. on other grounds 57 *N. J.* 468 (1971). The Supreme Court recognized in *Flaxman v. Flaxman,* 57 *N. J.* 458, 465 (1971) that "New Jersey has no provision for alimony where a marriage is annulled." The trial court observed in *Sharpe, supra,* 109 *N. J. Super.* at 415, that the omission of such authority after judgment of nullity "indicates a legislative intent that there be no power to grant alimony in the event of a void or annulled marriage." See *Wigder v. Wigder,* 14 *N. J. Misc.* 880, 188 *A.* 235 (Ch. 1936).

But now, by virtue of the new Divorce Act, *L.* 1971, *c.* 212, § 8 (*N. J. S. A.* 2A:34-23), alimony *may* be awarded "[i]n all actions brought for divorce, divorce from bed and board, or *nullity* [emphasis supplied]." And included among the causes for judgments of nullity of marriage enumerated in *N. J. S. A.* 2A:34-1 are cases where "[e]ither of the parties has another wife or husband living at the time of a second or other marriage."

Since the court is now empowered to award alimony where appropriate in the event of a void marriage, the question may arise whether this is restricted to annulment proceedings. We have in mind a situation where a wife seeks a judgment of separate maintenance and the husband counters with the assertion that the marriage was a nullity because at the time it was entered into his previous marriage, purportedly dissolved by a void Mexican divorce, still subsisted. Assuming that the wife in the hypothesis was completely unaware of the impediment, it would appear that in such circumstances the husband should properly be estopped to assail

the marriage. However, would the wife nevertheless be barred from relief because a separate maintenance action must be predicated upon a lawful marriage? If so, the anomalous result would be that the wife in such case would be entitled to support, if at all, only if she sought to annul the marriage, rather than to rely upon it. While we doubt that the Legislature contemplated such result, or that it ought to receive judicial sanction, we need not resolve that problem at this time, because the facts of this case are markedly different.

This brings us to the second prong of *Tonti*, which dealt with the application of estoppel. The court said:

In New York, the obligation of support has been enforced in certain cases by means of a *quasi* estoppel, notwithstanding that the marriage was a nullity. *Krause v. Krause*, 282 *N. Y.* 355, 26 *N. E.* 2d 290 (1940). See, also, *Rooney v. Rooney, supra* [54 *N. J. Eq.* 231]. But this doctrine is not applied where the bigamous marriage was founded upon a Mexican divorce such as we have here. *Caldwell v. Caldwell*, 298 *N. Y.* 146, 81 *N. E.* 2d 60 (1948). As in that case, there was not even the slightest semblance or color of jurisdiction in the Mexican court to dissolve the marriage here under review. The attempt to confer jurisdiction upon the foreign court by the powers of attorney was wholly ineffectual. It was the result of a collusive compact to procure a foreign divorce contrary to the policy of our own statute, by parties whose domicile and residence remained in New Jersey. There was no lawful submission to the jurisdiction of the Mexican forum. That court did not have cognizance of either the subject matter or the parties. The marriage here did not give rise to the obligation of support, either under the statute or by operation of a *quasi* estoppel. Defendant was aware of the vital infirmity in the foreign decree, and so equally at fault. To apply the principle of estoppel in such circumstances would be to place in the hands of the parties the opportunity and the means of frustrating the policy of our own statute which puts the dissolution of the marriage status beyond the control of the parties; and this would be inadmissible. * * *

Where, as here, the parties are *in pari delicto*, the law leaves them where it finds them * * *. [1 *N. J.* at 537.]

The facts here are comparable and militate just as strongly against plaintiff. We cannot conceive of her successfully maintaining an annulment action, had she chosen to pursue

that remedy. The doctrine of unclean hands remains valid with respect to annulments. See *Ramshardt v. Ballardini,* 129 *N. J. Super.* 445, 447 (Ch. Div. 1974). One who is chargeable in law with knowledge that he or she is not free to marry and nevertheless goes through a marriage ceremony with another is not entitled to relief in a court of equity. *Keller v. Linsenmyer,* 101 *N. J. Eq.* 664, 676–677 (Ch. 1927). See also *Tyll v. Keller,* 94 *N. J. Eq.* 426, 428–429 (E. & A. 1922). We perceive no valid basis for reaching a different conclusion with respect to plaintiff's suit for separate maintenance.

It is clear to us that *Tonti* controls the facts of this case and affords us no alternative to leaving the parties where we find them. See also *Untermann v. Untermann, supra.* In his dissenting opinion, Justice Wachenfeld expressed the view that since both parties had the same knowledge and belief with respect to the Mexican divorce, and nevertheless, married and cohabited for a number of years, the husband should not be permitted to escape the obligation of support and maintenance. He stated that if "appellant is estopped to deny the validity of the marriage in affirmative relief * * * the estoppel should also operate equally to bar his attack upon the marriage when the wife seeks to obtain the enforcement of the obligation based upon that relationship." There is much to commend in the dissenting opinion, but we are guided, as we must be, by the opinion of the majority of the court.

Accordingly, we are constrained to affirm the judgment under review.